[No. B229112. Second Dist., Div. Four. Aug. 12, 2012.]

DIVINIA ABIGAIL BARROSO, Plaintiff and Appellant, v.
OCWEN LOAN SERVICING, LLC, et al., Defendants and Respondents.

COUNSEL

Neighborhood Legal Services of Los Angeles County, Nu Usaha, Antonio Hicks; Lorden & Reed and Zshonette L. Reed for Plaintiff and Appellant.

Kent Qian; Elizabeth Letcher; Mercer Legal and Eric Andrew Mercer for National Housing Law Project, Housing and Economic Rights Advocates, Law Foundation of Silicon Valley, California Reinvestment Coalition and Eric Mercer as Amici Curiae on behalf of Plaintiff and Appellant.

Houser & Allison, Eric D. Houser, Robert W. Norman, Jr., Steve W. Pornbida and Brian Wagner for Defendants and Respondents.

OPINION

EPSTEIN, P. J.—Divinia Abigail Barroso challenges the trial court order sustaining a demurrer, without leave to amend, to her complaint arising from the failed loan modification and eventual foreclosure sale of her home. We conclude that Barroso alleged formation of a valid contract to modify her loan documents. She did not allege compliance with the conditions for a revised loan modification offered to her later. We reverse the trial court's order as to the breach of contract cause of action because it sufficiently alleged breach of the modification agreement. For the same reason, Barroso should be permitted to allege a cause of action for breach of the covenant of good faith and fair dealing based on breach of the modification agreement. In addition, we conclude that Barroso should be allowed to amend the complaint to allege a cause of action for common law wrongful foreclosure based on the valid modification agreement.

## FACTUAL AND PROCEDURAL SUMMARY

In reviewing an order sustaining a demurrer, we assume the factual allegations pleaded to be true and examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr.3d 181, 224 P.3d 920].) The following facts are alleged or are cognizable by judicial notice.

Barroso purchased a single-family dwelling on Mallison Avenue in South Gate in 2005. As part of the purchase, she executed a promissory note secured by a deed of trust in the amount of $372,000 (the loan documents). On information and belief, Barroso alleges that Ocwen Loan Servicing, LLC (Ocwen), acquired the servicing rights to the original loan. In 2008, Barroso

encountered financial difficulties and was unable to make timely monthly mortgage payments. Ocwen began foreclosure proceedings on the property by recording a notice of default in January 2009 and a notice of trustee sale on April 16, 2009.

In response, Barroso began to negotiate for a loan modification. In June 2009, she was notified by Ocwen that she was eligible for benefits under the federal government Home Affordable Modification Program (HAMP).[1] She alleges the notice informed her: "If you comply with the terms of the Home Affordable Trial Period Plan and the Modification Agreement, we will modify your mortgage loan and waive all prior late charges that remain unpaid." Barroso claims a copy of this letter was incorporated by reference to the complaint as exhibit A, but that letter is dated October 20, 2009, as we discuss below. She alleges that enclosed with this letter from Ocwen were a "Home Affordable Modification Trial Period Plan (Step One of Two-Step Documentation Process)" which she refers to as the "Trial Period Plan," and a "Home Affordable Modification Agreement (Step Two of Two-Step Documentation Process)," which she refers to as the "Modification Agreement." The complaint incorporated these documents by reference. According to the complaint, Barroso was to make payments of $1,301.60 on the first of the month in July, August, and September 2009 under the Trial Period Plan. Under the Modification Agreement, she would make monthly payments of $1,301.60 beginning on October 1, 2009, and thereafter, with increases in the payment scheduled for October 2014.

Barroso alleges that she signed the Trial Period Plan and the Modification Agreement on July 3, 2009, and submitted both to Ocwen, with the July 1, 2009 payment of $1,301.60. She further alleges that Ocwen acknowledged receipt of that payment. Barroso alleges: "The original signed agreements are in the possession of Defendant Ocwen." She made the monthly payments when due under the Modification Agreement from August through November 2009.

After November 2009, Barroso believed she was making payments under a revised modification agreement. She states that Ocwen sent her a revised Home

---

[1] "The United States Department of the Treasury and other federal agencies created HAMP pursuant to authority granted by the Emergency Economic Stabilization Act, title 12 United States Code section 5201 et seq. [Citation.] Mortgage servicers may voluntarily participate in HAMP. [Citation.] Treasury guidelines set forth threshold criteria to define the class of eligible borrowers. [Citation.] The guidelines also set forth accounting steps using a standardized net present value test to determine whether it is more profitable to modify the loan or allow it to proceed to foreclosure. [Citation.]" (*Nungaray v. Litton Loan Servicing, LP* (2011) 200 Cal.App.4th 1499, 1501, fn. 1 [135 Cal.Rptr.3d 442].)

Affordable Modification Agreement (Step Two of Two-Step Documentation Process) (Revised Modification Agreement) in December 2009, reducing the monthly mortgage payments to $1,294.85 effective October 1, 2009. It stated that if all of Barroso's representations remained true and all preconditions to the modification were met, the loan documents would automatically be modified on October 1, 2009, and all unpaid late charges would be waived. The complaint does not explain why this modification was sent to Barroso two months after its effective date. She alleges that the October 2009 payment already had been made and receipt acknowledged by Ocwen. Barroso alleges that she signed the Revised Modification Agreement on December 11, 2009, and submitted it to Ocwen with a payment of $1,300. She alleged that the original signed Revised Modification Agreement was in the possession of Ocwen.

Barroso made monthly payments of $1,300 from January through April 2010, as acknowledged by Ocwen. Barroso alleges she first learned something was wrong on May 7, 2010, when she received a notice to quit from an attorney acting on behalf of defendant U.S. Bank, described in the complaint as trustee for the registered holders of asset-backed certificates, series 2006. She contacted Ocwen and learned that the property had been auctioned at a foreclosure sale in April 2010. There were no bidders and the property reverted to the beneficiary, whom she alleges to be defendant U.S. Bank. In June 2010, Ocwen returned the April 2010 payment made by Barroso for the stated reason that the payment was not sufficient to satisfy the defaulted amount and no alternative payment arrangements had been made. She was directed to contact her home retention specialist immediately to avoid a foreclosure sale (which in fact already had taken place). Barroso alleges that this letter was false because she had accepted three alternative payment agreements, the Trial Period Plan, the Modification Agreement, and the Revised Modification Agreement. The complaint alleges that the Trial Period Plan was fully performed and that the other two agreements were "partially performed."

The complaint alleges a cause of action for breach of the Trial Period Plan, the Modification Agreement, and the Revised Modification Agreement, alleging that Barroso had performed each act required under these agreements, including making all payments when due. Despite Barroso's full performance, she alleges Ocwen breached the agreements by failing to honor their terms, wrongly proceeding to foreclosure sale, and wrongfully selling the property to the trustee without offering her an alternative to avoid foreclosure.

The second cause of action against Ocwen is for specific performance of the Revised Modification Agreement. The third cause of action against Ocwen is for wrongful foreclosure, alleging that Barroso was not in default

under the terms of the Revised Modification Agreement. The fourth cause of action is against defendant U.S. Bank for cancellation of the deed on the trustee's sale. The fifth cause of action, also against U.S. Bank, is to enjoin the eviction of Barroso and her family from the property. Barroso unsuccessfully sought a temporary restraining order and preliminary injunction to halt the unlawful detainer action.

Ocwen and U.S. Bank (collectively defendants) demurred to the complaint on the ground that each of the causes of action failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) They contended that the loan modification process was not completed due to Barroso's ineligibility and that they never agreed to modify the terms of her existing mortgage or to cancel the pending foreclosure sale. The demurrer includes a factual summary based on documents which the trial court judicially noticed. We granted defendants' request to take judicial notice of these documents on appeal.

Defendants argued that Barroso failed to allege receipt of a fully executed loan modification agreement signifying the satisfaction of all conditions precedent, and therefore there was no loan modification agreement. They also contended that specific performance is not an independent cause of action, but instead is an equitable remedy for breach of contract.[2] They also argued that Barroso failed to allege sufficient facts to demonstrate that the foreclosure was unlawful or any other basis for cancellation of the trustee's deed, including a failure to allege tender of the amounts due under the mortgage. Finally, defendants contended that Barroso had failed to allege a basis for injunctive relief. In her opposition, Barroso argued that she had alleged that she signed and returned the agreement, that Ocwen had the fully executed original contracts in its possession, and that the language requiring Ocwen's signature was a condition subsequent and did not defeat the validity of the contract.

The trial court sustained the demurrer without leave to amend. It found Barroso's allegations were contradicted by the exhibits attached to the complaint which stated that the loan documents would not be modified unless and until the borrower received a copy of the agreement signed by Ocwen. The trial court concluded that Barroso's breach of contract cause of action failed on this ground and that the specific performance cause of action, which is derivative of the cause of action for breach of contract, failed for the same

---

[2] In her reply brief, Barroso concedes that there are no separate causes of action for specific performance and injunctive relief, which are instead remedies. (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1360, fn. 2 [117 Cal.Rptr.3d 747] [specific performance and injunctive relief are equitable remedies and not causes of action for injuries]; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 162 [64 Cal.Rptr.3d 488] [injunctive relief].)

reason. The court found that Barroso had not alleged a violation of the foreclosure statutes or any other basis for setting aside the sale or canceling the deed. The court concluded that leave to amend should be denied because it was not probable from the nature of the complaint, and the previous unsuccessful attempt to plead, that plaintiff could state a cause of action. The court denied leave to amend on that basis.

Barroso filed her notice of appeal from this order on November 19, 2010. We issued an order to show cause why the appeal should not be dismissed as being taken from the order sustaining the demurrer, which is a nonappealable order. After Barroso responded, we gave her 30 days to file and serve a judgment of dismissal. In February 2011, the trial court modified a judgment of dismissal submitted pursuant to the stipulation of the parties to entitle it "Order of Dismissal" and signed it. We granted an application to file an amicus curiae brief by the National Housing Law Project, Housing and Economic Rights Advocates, Law Foundation of Silicon Valley, California Reinvestment Coalition, and Eric Mercer. We took the matter off calendar, granted judicial notice of documents presented by defendants to the trial court in opposition to the demurrer, and granted the parties leave to file supplemental briefs regarding amendment to add a cause of action for breach of the covenant of good faith and fair dealing. Supplemental briefs were filed by Barroso and Ocwen.

## DISCUSSION

We apply the de novo standard to review an order sustaining a demurrer. (*Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 75 [114 Cal.Rptr.3d 887].) Since the trial court sustained the demurrer without leave to amend, we must determine "whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend." (*Id.* at p. 76.) It is plaintiff's burden to establish that the complaint could be amended to cure any pleading defect. (*Ibid.*)

■ Barroso attached the three relevant loan modification documents (the Trial Period Plan, the Modification Agreement, and the Revised Modification Agreement) to her complaint and incorporated them by reference. " 'Where a written contract is pleaded by attachment to and incorporation in a complaint, and where the complaint fails to allege that the terms of the contract have any special meaning, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action for breach.' [Citation.] Moreover, '[t]he rule on demurrer is simply a variation on the well-recognized theme that "[i]t is . . . solely a judicial function to interpret a

written instrument unless the interpretation turns upon the credibility of extrinsic evidence." [Citations.]' [Citation.]" (*Davies v. Sallie Mae, Inc.* (2008) 168 Cal.App.4th 1086, 1091 [86 Cal.Rptr.3d 136].) ■ " 'The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. [Citation.] "The words of a contract are to be understood in their ordinary and popular sense." [Citations.]' [Citation.]" (*Avalon Pacific-Santa Ana, L.P. v. HD Supply Repair & Remodel, LLC* (2011) 192 Cal.App.4th 1183, 1198, fn. 3 [122 Cal.Rptr.3d 417].)

On enforceability of the Modification Agreements, Barroso's position is that she formed a binding contract with Ocwen to modify the terms of her mortgage and that Ocwen waived any right to claim conditions precedent had not been satisfied by accepting modified mortgage payments for nine months. She also argues that leave to amend should have been granted to allow her to plead causes of action for promissory estoppel, wrongful foreclosure, and breach of the covenant of good faith and fair dealing. Defendants argue that no agreement to modify the terms of the mortgage was reached because express conditions precedent were not satisfied. These include Barroso's untimely execution of one of the agreements and failure to have her signature notarized, as well as Ocwen's failure to return a signed copy to Barroso. Defendants contend that the express terms of the modification agreements allowed for acceptance of payments without waiver of any right to foreclose or other remedies. They assert that there was no breach of contract and that Barroso cannot amend her complaint to state causes of action for promissory estoppel, wrongful foreclosure, or breach of the covenant of good faith and fair dealing. We begin with the breach of contract cause of action.

I

■ The breach of contract cause of action turns on whether Barroso failed to allege performance of a condition precedent to formation of a valid agreement to modify the terms of her loan. "In contract law, a 'condition precedent' is 'either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises.' [Citation.]" (*Wm. R. Clarke Corp. v. Safeco Ins. Co.* (1997) 15 Cal.4th 882, 885, fn. 1 [64 Cal.Rptr.2d 578, 938 P.2d 372].)[3] "The existence of a condition precedent normally depends upon the intent of the parties as determined from the words they have employed in the contract. (13 Williston on Contracts (4th ed. 2000) § 38:16, at p. 441.)" (*Realmuto v. Gagnard* (2003)

---

[3] The Civil Code also defines "condition precedent": "A condition precedent is one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed." (Civ. Code, § 1436.)

110 Cal.App.4th 193, 199 [1 Cal.Rptr.3d 569].) " 'The rule is that provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction. [Citations.]' (*Rubin v. Fuchs* (1969) 1 Cal.3d 50, 53 [81 Cal.Rptr. 373, 459 P.2d 925].) [Fn. omitted.]" (*Fireman's Fund Ins. Co. v. Sizzler USA Real Property, Inc.* (2008) 169 Cal.App.4th 415, 421 [86 Cal.Rptr.3d 715].) Barroso invokes the rule that conditions precedent are not favored in the law and that we should not "construe a term of the contract so as to establish a condition precedent absent plain and unambiguous contract language to that effect. [Citation.]" (*Frankel v. Board of Dental Examiners* (1996) 46 Cal.App.4th 534, 550 [54 Cal.Rptr.2d 128].)

Three conditions are at issue here: (1) whether Barroso was required to have her signature notarized; (2) whether execution of an agreement depended upon Ocwen returning a copy of the agreement it had signed to Barroso; and (3) whether she met the October 30, 2009 deadline for her signature on the Revised Modification Agreement.

A. ·Contract Terms

 1. *Signature Requirements*

 a. *Barroso's Notarized Signature*

As we shall explain, we conclude that Barroso has alleged a viable cause of action for breach of the Modification Agreement, but not the Revised Modification Agreement. This is because the exhibits incorporated into the complaint establish that Barroso was required to have her signature on the Revised Modification Agreement notarized. No similar requirement for the Modification Agreement is established on this record, and Barroso alleged full compliance with the other requirements of that agreement.

Ocwen does not directly address whether Barroso was required to notarize her signature on the Modification Agreement when she signed it in July 2009. Instead, it cites provisions in both the Modification Agreement and Revised Modification Agreement stating that the loan documents would not be modified until Barroso received a copy of the agreement signed by Ocwen, an issue we discuss next. Ocwen then states: "In addition to failing to sign the document before a notary as expressly required in the offer, Barroso does not allege or attach a fully executed agreement by [Ocwen] as was also expressly required by the terms to demonstrate finalization (accepting her December of 2009 attempt to retroactively create a loan modification in October 2009)." This sentence appears to refer to the Revised Modification Agreement rather than the Modification Agreement. Ocwen concludes that Barroso failed to plead facts to support satisfaction of the critical express conditions to contract formation.

Barroso executed the Trial Period Plan on July 3, 2009, but her signature was not notarized. On the form for her signature, the word "(Seal)" appears at the end of the line for her signature. Barroso also executed the Modification Agreement on July 3, 2009, without notarization. The signature form is the same as on the Trial Period Plan form, with the word "(Seal)" typed at the end of the line for the borrower's signature:

"In witness Whereof, the Servicer and I have executed this Agreement.

| | |
|---|---|
| _____ | [Barroso signature] (Seal) |
| "Servicer | Borrower |
| | "7–3–09 _____ |
| | "Date |
| "By:_____ | _____ (Seal) |
| | "Borrower |
| " _____ | _____ |
| "Date | Date" |

No other space or form for notarizing Barroso's signature is provided on the Modification Agreement. The document does not include a jurat form.

Ocwen argues that Barroso was required to sign "the document" before a notary "as expressly required in the offer." It does not distinguish between the Modification Agreement and the Revised Modification Agreement in making this argument, and provides no citation to the record which would provide clarification. We have examined the entire Modification Agreement and have found no requirement that Barroso execute the document before a notary. As we have noted, no form for a notary to fill out is provided on the signature page of the Modification Agreement. Significantly, unlike the Modification Agreement, the signature page of the Revised Modification Agreement has a detailed form for the notary to fill out acknowledging that the borrower signed the document before him or her.

The only express requirement that Barroso's signature be notarized appears in the letter attached to the complaint as exhibit A, and incorporated by reference, from Ocwen to Barroso dated "10/20/2009."[4] The letter congratulates Barroso on her eligibility for a HAMP modification. Barroso describes this document in her complaint as the letter she received in June 2009 notifying her of her eligibility for a loan modification. But at oral argument the parties agreed that exhibit A was *not* the cover letter for the Modification Agreement sent to Barroso in June 2009 in light of its date. Instead it accompanied the Revised Modification Agreement sent to Barroso later.

---

[4] Exhibit A states that a modification agreement is enclosed, but no modification agreement is attached as part of exhibit A.

Three steps for accepting the offer are set out in exhibit A. Step 1 stated that Barroso had to sign and return both copies of the modification agreement before October 30, 2009. It also said: "If the Modification Agreement has notary provisions at the end, you must sign both copies before a notary public and return the notarized copies to us." Step 2 required complete and timely payments and step 3 required return of both copies of the modification agreement to Ocwen. Exhibit D to the complaint provided for a first payment on October 1, 2009.

We are satisfied that the word "Seal" at the end of the line for the borrower's signature on the Modification Agreement was not sufficient to establish that Barroso was required to have her signature on that document notarized as a precondition to forming a valid contract to modify the terms of her loan. Barroso's allegation that she performed as required by the Modification Agreement leads to the conclusion that she has adequately alleged compliance with the signature requirement for that agreement. Our conclusion regarding the Revised Modification Agreement is different. Both exhibit A and the signature block of the Revised Modification Agreement required Barroso to have her signature notarized as a condition of her performance. The Revised Modification Agreement incorporated into the complaint demonstrates that she failed to do so since the form for the notary to use is blank. Barroso cannot allege satisfaction of the signature requirement for the Revised Modification Agreement.

### b. *Return of Copy Signed by Ocwen*

In its brief, Ocwen argues there was no agreement to modify Barroso's loan because she did not allege that she received a copy of any modification agreement signed by both her and Ocwen. Each modification plan offered to Barroso included language that it would not take effect unless both Barroso and Ocwen signed the agreement and a fully executed copy was returned to Barroso. While Barroso alleges that the signed documents are in Ocwen's possession, she does not allege Ocwen's signature and return to her of any of the loan modification documents. Significantly, at oral argument, counsel for Ocwen stated that Ocwen does not argue that its failure to sign and send executed copies of the modification agreements to Barroso precluded formation of the contract for modification. This concession is appropriate since the failure to return an executed copy of the agreement in the circumstances of this case could not act as a condition precedent precluding formation of a binding modification agreement.

██ " 'A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.' (Civ.

Code, § 1643; *Beverly Hills Oil Co.* v. *Beverly Hills Unified Sch. Dist.* (1968) 264 Cal.App.2d 603, 609 [70 Cal.Rptr. 640].) 'The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable.' (*Strong* v. *Theis* (1986) 187 Cal.App.3d 913, 920 [232 Cal.Rptr. 272].)" (*Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1111–1112 [63 Cal.Rptr.2d 261].)

The interpretation Ocwen had asserted below and in the briefing here would violate these fundamental principles of contract interpretation. Were we to adopt that interpretation, Ocwen would have sole control over the formation of the contract despite Barroso's full performance, simply by refusing to return a signed copy to her. Moreover, such an interpretation would conflict with language in the first paragraph of the Modification Agreement: "If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ('Agreement') will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."

### 2. *Time of the Essence*

Each plan declared that time was of the essence. Defendants contend that no agreement to modify the loan documents was formed because Barroso failed to sign the Revised Modification Agreement by the October 30, 2009 deadline. But no issue is raised regarding the timeliness of Barroso's signature on the Trial Period Plan and the Modified Agreement in July 2009.

### B. *Summary*

We conclude that Barroso adequately alleged the existence of a valid Modification Agreement signed by her in July 2009. The record on this demurrer does not establish a requirement that Barroso's signature on that agreement be notarized. The failure of Ocwen to send Barroso a signed copy of the agreement is not a condition precedent barring formation of the binding modification agreement. No argument is made that Barroso's signature on July 3, 2009, was untimely.

Barroso alleges that she made payments under the Modification Agreement in August, September, October, and November 2009 when due. She made additional payments, which are alleged to have been under the Revised Modification Agreement, in December 2009 and January, February, March, and April 2010. Paragraph 21 alleges that Ocwen had auctioned the property at a foreclosure sale "notwithstanding Plaintiff having made all the payments required under the Trial Period Plan, the Modification Agreement and the Revised Modification Agreement . . . ."

Paragraph 23 of the complaint alleges that Ocwen offered three agreements (the Trial Period Plan, the Modification Agreement, and the Revised Modification Agreement) and that Barroso accepted each. Barroso alleges that the Trial Period Plan was completely performed, and that the Modification Agreement and Revised Modification Agreement were partially performed. We construe the allegation of partial performance of the Modification Agreement in the context of Barroso's allegation that she made all the payments due under that plan up to the foreclosure sale. The Modification Agreement created a new maturity date for the loan of September 1, 2049, with monthly payments scheduled until that date. We conclude that she alleged only partial performance of the Modification Agreement since her obligation to make monthly mortgage payments extended beyond the foreclosure date.

Barroso alleges that Ocwen breached the agreements by "failing to honor the terms of the agreements, wrongly proceeding to foreclosure sale, and wrongfully selling the Property at a trustee [sale] without offering Plaintiff any 'alternatives that may be available to avoid foreclosure' as represented in the May 26, 2010 letter (Exhibit 'F') and allowing title to the Property [to] revert to the beneficiary." She sought damages based on her loss of title to the property, for fees and costs, and other incidental expenses.

■ The trial court erred in sustaining the demurrer to the cause of action for breach of contract to the extent it is based on the Modification Agreement. But Barroso did fail to have her signature on the Revised Modification Agreement notarized, as required. In addition, both the allegations of the complaint and the Revised Modification Agreement itself establish that Barroso signed it on December 11, 2009, well beyond the October 30, 2009 deadline for accepting that offer. We therefore conclude that the demurrer was properly sustained to the extent the cause of action for breach of contract is based on the Revised Modification Agreement.

■ These conclusions guide our determination as to whether Barroso should have been granted leave to amend to allege a cause of action for breach of the implied covenant of good faith and fair dealing based on Ocwen's failure to modify her loan documents. "It has long been recognized, of course, that every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. [Citation.] The Supreme Court has clarified, however, that an implied covenant of good faith and fair dealing cannot contradict the express terms of a contract. (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374 [6 Cal.Rptr.2d 467, 826 P.2d 710] (*Carma*).) [Fn. omitted.]" (*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.* (2002) 100 Cal.App.4th 44, 55 [122

Cal.Rptr.2d 267].) "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 683–684, 689–690 [254 Cal.Rptr. 211, 765 P.2d 373].)" (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031 [14 Cal.Rptr.2d 335].) Under the terms of the Modification Agreement, Ocwen was obligated to modify Barroso's loan documents. Instead, it foreclosed on the property despite Barroso's payments and sold it. On remand, Barroso is to have leave to amend to allege a cause of action for breach of the implied covenant with respect to the Modification Agreement, but not the Revised Modification Agreement.

## II

Our conclusion that Barroso has alleged an enforceable Modification Agreement renders discussion of some of her alternative arguments unnecessary.

### A. Waiver by Acceptance of Payments

Barroso, joined by amici curiae, argues that Ocwen waived enforcement of the conditions precedent by accepting nine payments she made under the modifications, through March 2010. Ocwen relies on language in the Modification Agreement and Revised Modification Agreement providing that unless modified, the terms of the original loan documents remain in full force and effect. The original deed of trust states that the lender may accept any payment or partial payment without waiver of any rights. Similar language appears in the original deed of trust. In light of our conclusion that Barroso has alleged an enforceable Modification Agreement, we need not reach this argument.

### B. Statute of Frauds

Barroso makes the alternative argument that the statute of frauds does not apply because she fully performed under the agreements. Ocwen does not appear to rely on the statute of frauds on appeal and it was not raised as an affirmative defense in the demurrer, as required. (*Ladd v. Warner Bros. Entertainment, Inc.* (2010) 184 Cal.App.4th 1298, 1309, fn. 8 [110 Cal.Rptr.3d 74].) We therefore need not discuss that issue.

## III

Barroso also argues she should have been given leave to amend to allege causes of action for promissory estoppel and wrongful foreclosure.

## A. *Promissory Estoppel*

 " ' "Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' [Citation.]" [Citation.] Because promissory estoppel is an equitable doctrine to allow enforcement of a promise that would otherwise be unenforceable, courts are given wide discretion in its application. [Citations.]' (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901–902 [28 Cal.Rptr.3d 894].) 'The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." [Citation.]' (*Id.* at p. 901.)" (*Joffe v. City of Huntington Park* (2011) 201 Cal.App.4th 492, 513 [134 Cal.Rptr.3d 868]; see *Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225 [120 Cal.Rptr.3d 507].)

Since the doctrine of promissory estoppel is applied where there is no enforceable promise, it does not apply here in light of our conclusion that Ocwen's promise to modify the loan documents under the Modification Agreement was enforceable. It follows that no amendment to add such a cause of action is necessary.

## B. *Wrongful Foreclosure*

 In her reply brief, Barroso concedes that she did not allege a cause of action for statutory wrongful foreclosure. Instead, she correctly contends that California recognizes a cause of action for wrongful foreclosure under equitable principles.[5] (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526 [134 Cal.Rptr.3d 604].) "A full tender must be *made* to set aside a foreclosure sale, based on equitable principles. [Citations.]" (*Ibid.*) The court in *Stebley* explained: "Allowing plaintiffs to recoup the property without full tender would give them an inequitable windfall, allowing them to evade their lawful debt." (*Ibid.*)

Barroso does not allege tender, nor does she suggest she could amend the complaint to cure this defect. Instead, she contends: "Respondents' contention that tender is required for Barroso to properly plead wrongful foreclosure is also without merit. In her complaint, Barroso pled that pursuant to the

---

[5] Alternatively, Barroso contends that if the trial court was correct in concluding that only a statutory cause of action for wrongful foreclosure could be brought, she should have been given leave to amend to add that theory of recovery. Since California recognizes a nonstatutory theory of wrongful foreclosure, as Barroso argues, we do not discuss the alternative of a statutory ground.

Permanent Modification [(Revised Modification Agreement)], all arrearages were capitalized and the default was cured. (CT 10–11). 'If, after a default, the trustor and beneficiary enter into an agreement to cure the default and reinstate the loan, no contractual basis remains for exercising the power of sale.' *Bank of America v. La Jolla Group II* (2009) 129 Cal.App.4th 706, 712 [28 Cal.Rptr.3d 825]. Here the facts pled establish that the trustee's sale of the House is invalid, effectively obviating the need to allege tender."

Paragraph 3 of the Modification Agreement states that all unpaid late charges that remain unpaid will be waived. Paragraph 3.B of the Modification Agreement states that the modified principal balance of Barroso's loan will include all amounts and arrearages that will be past due.[6]

■ In *Bank of America v. La Jolla Group II*, *supra*, 129 Cal.App.4th 706, a home loan went into default because payments were missed. A notice of default and election to sell under the deed of trust and a notice of trustee's sale were recorded and the sale was scheduled for November 12, 2002. Four days before that date, someone acting on behalf of the homeowners went to a branch of the beneficiary bank and tendered a payment on the loan. A branch employee accepted the payment and reinstated the loan. But the trustee was not notified that the loan had been reinstated and the foreclosure sale went forward. (*Id.* at p. 709.) The beneficiary bank sued the party that successfully bid on the property at the nonjudicial foreclosure sale, seeking cancellation of the trustee's deed upon sale. Various cross-actions were filed. The trial court found the sale and deed upon sale void and restored record title to the condition immediately prior to recordation of the deed upon sale. The Court of Appeal concluded that it was undisputed that the homeowners and the beneficiary bank had entered into an agreement to cure the default. It followed that the beneficiary bank had no right to sell after that agreement and the foreclosure sale was invalid. (*Id.* at p. 712.)

Barroso and Ocwen reached an enforceable agreement to modify the terms of her loan, and to bring the loan current, in July 2009. Barroso alleges that she made all payments subsequent to that date when due. Based on these allegations, she has alleged a basis for wrongful foreclosure under the principles applied in *Bank of America v. La Jolla Group II*, *supra*, 129 Cal.App.4th at page 712. It was not necessary for Barroso to tender any amount to Ocwen to forestall the foreclosure sale because there was no default under the terms of the Modification Agreement.

---

[6] Paragraph 3.B reads: "The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $423,322.49 (the 'New Principal Balance')."

## IV

Barroso asks us to reverse the trial court's ruling because it allows respondents to violate the policies supporting HAMP and leads to a harsh and unjust result. She cites language in the HAMP Supplemental Directive 09-01, dated April 6, 2009, and titled "Introduction of the Home Affordable Modification Program." That language provides that the program was aimed at helping three to four million at-risk homeowners, those in default and those at risk of default, by reducing monthly payments to sustainable levels. She has attached excerpts of this document as exhibit 1 to her opening brief. Her public policy argument is based, in part, on the assertion that she had "in good faith complied in every way with the required terms and thus fully performed under the Contracts." Our conclusion that Barroso has viable causes of action under the Modification Agreement makes it unnecessary to rely on this general policy argument.

## DISPOSITION

The order of dismissal based upon the sustaining of Ocwen's demurrer without leave to amend is reversed to the extent it is based on allegations regarding the Modification Agreement. Barroso is to be given leave to amend on remand consistent with the views expressed in this opinion. Barroso is to have her costs on appeal.

Manella, J., and Suzukawa, J., concurred.